UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| KAYA SIMIONS, ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | 2:09-cr-000199-GZS |
| ) | 2:11-cv-00154-GZS |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent ) | |

# RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION

Kaya Simions is pursuing 28 U.S.C. § 2255 relief from his guilty plea conviction and his felon-in-possession Armed Career Criminal sentence. Simions asserts two ineffective of assistance grounds in his motion: first, he faults his attorney for not moving for a downward departure on the basis of mental incapacity and for not making an argument that Simions's criminal history category substantially over-represented the seriousness of his criminal history and, second, he complains that his attorney did not seek a psychiatric exam to determine competency when he committed this federal offence prior to the entry of the guilty plea and/or the sentencing proceeding.[1] Simions was sentenced to 180 months, the mandatory minimum for his Armed Career Criminal conviction.[2] He did not appeal his conviction or sentence.

## Discussion

The Prosecution Version to which Simions pled guilty described his federal firearm offense as follows:

---

[1] Simions also refers briefly to a challenge to his competency vis-à-vis his prior convictions but this review would be beyond the purview of federal 28 U.S.C. § 2255 review.
[2] Simions's guideline range was 180 to 210 months as an Armed Career Criminal.

> On August 4, 2009, Defendant discharged a handgun into the air twice on Oak Street in Lewiston, Maine. Responding Lewiston Police officers observed an individual matching the shooter's description as he fled the scene. The officers initiated a foot pursuit and observed Defendant grasping the front of his pants as if holding something as he ran. Defendant was pursued into some bushes briefly and then he jumped a fence and was successful eluding the officers. As he ran, Defendant discarded his clothing and left a trail which led officers to a mosque a few blocks away. Defendant was apprehended in the mosque wearing only his undergarments. At the time of his arrest, Defendant was no longer in possession of the firearm. As officers began collecting clothing items dropped by Defendant, they located the missing firearm in the bushes. The firearm, a Colt, Model Cobra, .38 caliber revolver, bearing serial number F93718, contained four cylinders with live rounds and two cylinders with only shell casings, which was consistent with two rounds being fired by Defendant.

(Doc. No. 14 at 1.) It also listed five violent crimes in Massachusetts that were punishable by a term of imprisonment exceeding one year. (Id. at 2.)

**Ineffective Assistance of Counsel Standard[3]**

Simions's 28 U.S.C. § 2255 claims are dependent on proving ineffective assistance of counsel under the Strickland v. Washington, 466 U.S. 668 (1984) Sixth Amendment standard and Hill v. Lockhart, 474 U.S. 52 (1985), a case addressing ineffective assistance claims related to plea decisions. "In order to prevail," Simions must show "both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." United States v. De La Cruz, 514 F.3d 121, 140 (1st Cir. 2008) (citing Strickland, 466 U.S. at 688, 694). "In other words," Simions "must demonstrate both seriously-deficient performance on the part of [her] counsel and prejudice resulting there from." Id. "Moreover, when, as in this case, a petition for federal habeas relief is presented to the judge who presided at

---

[3] "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

2

the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993).

*Ground One*

Ground One really consists of two distinct grounds relating to sentencing. Simions faults counsel for not moving for a downward departure because of mental incapacity and not seeking a downward departure because of an overstatement of his criminal history. Simions states that his attorney "showed no remorse as to the downward departure where petitioner has routinely [asked about] the downward departure under USSG § 5K2.13 or a competency hearing under [18] U.S.C. § 4241(a)." (Reply Mem. at 9.)

United States Sentencing Guideline § 5K2.13 provides:

> A downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense. Similarly, if a departure is warranted under this policy statement, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.
> However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) <u>the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence</u>; (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public; or (4) the defendant has been convicted of an offense under chapter 71, 109A, 110, or 117, of title 18, United States Code.

USSG § 5K2.13 (emphasis added).[4]

---

[4] I address the related issue of a competency hearing below.

United States Sentencing Guideline § 481.3(b) allows downward departures for the overrepresentation of a defendant's criminal history but carries the following prohibitions that are applicable to Simions. He was not eligible for a downward departure because:

> **(A)** Criminal History Category I.--A departure below the lower limit of the applicable guideline range for Criminal History Category I is prohibited.
> **(B)** Armed Career Criminal and Repeat and Dangerous Sex Offender.--<u>A downward departure under this subsection is prohibited for (i) an armed career criminal within the meaning of § 4B1.4 (Armed Career Criminal)</u>…

USSG § 4A1.3 (emphasis added).

In response to the Presentence Investigation Report, Simions's attorney actually made a case for USSG § 4A.1.3(b)(1) and § 5K2.13 downward departures. The revised report summarized:

> The Probation Office has no information concerning the offense or the offender which, taken alone or in combination with other factors, would warrant a departure from the advisory sentencing guidelines. However, the defendant has noted his position that a downward departure may be warranted, pursuant to §4A1.3(b)(1), as he believes his criminal history score over-represents the seriousness of his criminal history. In particular, the defendant advised these paragraphs were properly scored, however, the offenses in those paragraphs occurred during a 30-day period when he was homeless and they were part of a packaged plea agreement. The Probation Office simply notes this issue for the Court's consideration prior to sentencing. Additionally, the defendant advised, through counsel, that he believes his mental health issues, as identified in ¶55, may warrant consideration of a guideline departure based on §5K2.13 (Diminished Capacity). The Probation Office notes, however, <u>the bottom of the advisory guideline range is the mandatory minimum sentence in this case.</u>
> **PART F. FACTORS THAT MAY WARRANT A SENTENCE OUTSIDE OF THE ADVISORY GUIDELINE SYSTEM**
> 72. The Probation Office has identified no factors under 18 U.S.C. § 3553(a) that would justify a non-guideline sentence. However, the defendant has noted his position that his mental health problems, as identified in ¶55, may warrant a variant sentence below the applicable guideline range. <u>The Probation Office notes, however, the bottom of the advisory guideline range is the mandatory minimum sentence in this case</u>.

(PIS ¶¶ 71, 72) (emphasis added).

4

The Revised Presentence Report was signed April 14, 2010. In defense counsel's second round of objections he focused on Simions's Armed Career Criminal Status arguing that the prosecution was unable to meet its burden of proof as to three of Simions's predicate convictions. (Revised PIR at 21.) Counsel cited United States v. Holloway I, 499 F.3d 114 (1st Cir. 2007) which was before the First Circuit for a second time and was awaiting oral argument and its relevance to "the assault" convictions in Paragraphs 26 (assault and battery on a police officer & resisting arrest) 30 (breaking and entering in the nighttime &assaults with a dangerous weapon), and 31 (assault and battery on a public employee). (Id.)[5] On May 13, 2010, counsel filed a sentencing memorandum that focused entirely on challenging Simions's ACCA status. (Doc. No. 6.) This was the key focus of Simions's advocacy during the sentencing hearing. (Sentencing Tr. at 3-13.)

With regards to the ineffective assistance of counsel claims, there is no reason to dig deeper into a discussion of the law before and after Holloway II. That is because counsel clearly presented his arguments as to why three of the offenses should not count as predicate offenses and after careful consideration this Court determine that all five convictions were predicates for ACCA purposes. (Sentencing Tr. at 13.) It indicated, in discussing one of the convictions, "under existing First Circuit precedent that's a qualifying conviction. I understand your position … that it's up for review. But it appears to be an underlying – proper underlying conviction under current law." (Id. at 5.) Once it was clear that Simions's ACCA status blocked any

---

[5] United States v. Holloway II, 630 F.3d 252 (1st Cir 2011) was decided on January 21, 2011.

departure from the fifteen-year statutory minimum, this ACCA challenge was counsel's best tactical approach to securing a lower sentence.[6]

There is correspondence between client and counsel documenting that the latter made it clear to Simions that he faces a fifteen-year mandatory maximum if he fell under the ACCA. In his December 31, 2009, letter to Simions predating the guilty plea, the federal defender explained:

> **The government claims that based on you prior convictions you qualify as an Armed Career Criminal under the ACCA which carries a minimum mandatory sentence of at least 15 years, and up to life.** If the judge finds ACCA to apply, he will have no choice but to sentence you to 15 years (or more). I anticipate 15 years will be far more than the result of the ordinary advisory sentencing guideline.

(Doc. No. 51-1 at 1.) The letter stressed: "[T]he choice of a guilty plea is totally up to you and you do not have to plea[d] guilty and can change your mind up until January 27, 2010." (Id. at 2.) A letter dated January 26, 2010, indicated: "While we can object to the judge applying the ACCA, my current best legal analysis is that the judge will find you are subject to ACCA and you will face at least 15 years in federal prison on this case." (Doc. No. 51-2 at 1.) After sentencing, counsel wrote a May 19, 2010, letter to Simions notifying him that he had the right to appeal both the conviction and the sentence within fourteen days of his sentencing. (Doc. No. 51-3 at 2.) "The judge found five priors that count," counsel continued, "ACCA requires only three. You certainly may appeal, but with three residential burglaries, each admitted to by you on the recordings [presented at sentencing], plus the assaults, I do not see a very realistic chance for any success in an appeal. Again, the decision is up to you." (Id.) Simions signed the form

---

[6] The objections to the PIR pertaining to mental capacity and the overstatement of criminal history might have been part of the defense strategy should the Court decide to sentence Simions to a term above the mandatory minimum.

clearly indicating that he did not want to appeal and waived the appeal. (Id.) Simions does not dispute that he received these letters.

It is my conclusion that Simions is not entitled to 28 U.S.C. § 2255 relief as to Ground One. Pressing an argument for the departures irrespective of Simions's ACCA status would have been a futile exercise even if there was some merit in the underlying arguments.[7] The record evidences an informed and avid advocacy by defense counsel on Simions's behalf and the decision to focus on the ACCA concern was clearly a tactical choice. See Strickland, 466 U.S. at 689.

### *Ground Two*

Simions's second 28 U.S.C. § 2255 ground is that his attorney did not seek a psychiatric exam to determine competency. Simions writes:

> Here in the instant case, defense counsel had information regarding Defendant's mental state and the fact that not only did Defendant suffer from a severe mental disorder and defect at the time of the commission of the offense but also suffered from a severe mental defect at the time the pleas were entered related to the state prior convictions which served as predicate offenses for the Armed Career Criminal Sentencing Enhancement under 18 U.S.C. § 924(e).
> Counsel's failure to move the court for a psychiatric evaluation of Defendant to determine Defendant's mental competence constituted ineffective assistance of counsel.

(Sec. 2255 Mem. at 21.)

"At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant … the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant." 18 U.S.C. §

---

[7] My discussion of Ground Two below supports a conclusion that a downward departure for mental incapacity would have been met with skepticism by the court.

4241(a).[8] "The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." Id.; see also United States v. Sanchez-Ramirez, 570 F.3d 25, 80 (1st Cir. 2009). "Competence to enter a guilty plea is determined by the same criteria as those governing competence to stand trial: whether the defendant is able to understand the proceedings and assist his counsel with a reasonable degree of rationality." United States v. Morrisette, 429 F.3d 318, 322 (1st Cir.2005)." United States v. Figueroa-Gonzalez, 621 F.3d 44, 47 2010). The same would hold true for sentencing proceedings.

> In a December 22, 2009, letter from his public defender, counsel indicated in part:
>
> I discussed with you the option of a mental health exam and you assured me that you understand the situation and while you have been diagnosed in the past as bi-polar, you do not want to have a mental health examination and you do not feel your mental health is an aspect of the current charge.

(Doc. No. 51 at 1.) This letter pre-dated the January 27, 2010, change of plea.

In his reply memorandum Simions faults counsel for failing "to seek evaluation rather than asking said petitioner if he needs to be evaluated." (Reply Mem. at 5, Doc. No. 50.) He stresses he had "no career in law" prior to entry of his guilty plea. (Id.) He also represents that this question put to him by counsel "caused immediate paranoia." (Id. at 7.)

The record belies Simions's suggestion that there was a reason to call for an 18 U.S.C. § 4241 competency hearing either before the plea was taken or before sentencing. Near the

---

[8] Simions faults his attorney for not asking the prosecution whether it would seek a hearing to determine competency. (Reply Mem. at 9.) I can discern no extra advantage in having the prosecution move for a competency hearing rather than defense counsel.

beginning of the change of plea hearing the following exchange took place between the federal defender and the Court:

> Your Honor, I do want to mention that Mr. Simions has had some mental health difficulties in the past. We've looked into that and I've spent a fair amount of time with him. I don't have any concerns about his competence and I've checked as recently as today with the jail. He's not receiving nor prescribed any medications and I want the Court to be aware of that.
> THE COURT: Thank you. I appreciate that and in looking at Mr. Simions and talking to him, he appears to be perfectly normal to me.

(Rule 11 Tr. at 4.) See McGill, 11 F.3d at 225.

There is absolutely no indication that during sentencing there was any concern raised about his competency during that proceeding. (See, e.g., Sentencing Tr. at 2.) The federal defender did make a point of addressing Simions's past mental health struggles with the Court during the sentencing proceedings:

> …I've had a significant period of time to work with Mr. Simions, who is very remorseful about the situation. Other than the first assault and battery on a police officer in Paragraph 26, all of the remaining predicates occurred within a two-month period in 2008. And as you heard on the tapes and as you see in the medical records, Kaya was struggling with some mental health issues at the time, and there is nothing any of us can do now about how the situation was handled back then.
>     Kaya is a bright young man, he is a young man. Certainly 15 years will be a lengthy period of incarceration. But he holds tremendous promise, Your Honor. He is resourceful; he is very well read; he is very articulate. And my observations, at least, have been that, other than the mental health problems and some of the internal anger that existed surrounding those growing up, that he is able to and has outgrown that and that going forward he has a bright future in front of him.

(Sentencing Tr. at 15.) This is an indication that defense counsel did not feel like Simions was currently laboring under mental incompetency.[9] This Court noted: "You're not on medications now; you seem to be doing well." (Id. at 17.)[10] See McGill, 11 F.3d at 225.

---

[9]     Paragraph 55 of the Presentence Investigation Report summarized:

9

I conclude that there is no merit to this ground. Simions has not provided evidence concerning his interactions with counsel that supports a conclusion that counsel should have moved for a competency exam even though his client expressly told him he did not want a mental health exam and did not feel that his mental health was an aspect of the current charges. All evidence shows that Simions understood the proceedings and assisted his counsel with a reasonable degree of rationality. Figueroa-Gonzalez, 621 F.3d at 47.

## CONCLUSION

For the reasons above, I recommend that the Court deny Simions 28 U.S.C. § 2255 relief. I further recommend that a certificate of appealability should not issue in the event Simions files a notice of appeal because there is no substantial showing of the denial of a constitutional right as contemplated by 28 U.S.C. § 2253(c)(2).

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being

---

Simions acknowledged he has experienced mental health problems since childhood. He stated he has been hospitalized on several occasions, but he could only recall with any detail one period of inpatient treatment at Bayridge Hospital located in Lynn, Massachusetts. Records from Bayridge Hospital reflect the defendant had three prior admissions (8/23/05 - 9/27/05; 11/1/05 - 11/23/05; and 11/13/06 - 11/28/06). The most recent discharge summary from Bayridge Hospital revealed the defendant has a history of self-abuse, including one episode in November 2005, during which the defendant cut himself with a box cutter. These records also verify Simions has a diagnosis of Schizoaffective Disorder. Finally, the same records also reflect the defendant has a history of noncompliance with medication. During the presentence interview, Simions stated, in the past, he has been prescribed "tons of medication," but that mental health medication has "never helped" and he has not taken the same since 2007. He recalled he was last prescribed Thorazine, an anti-psychotic medication, while incarcerated in Massachusetts, in 2007.
(PIR ¶ 55.)
The United States has also filed ten exhibits relating to Simions's treatment history. (Docs. Nos. 45-1 through 45-3, 45-4 through 45-11.)

[10] Because Simions also brings up his competency during the prior offenses, I reiterate that a 28 U.S.C. § 2255 proceeding is not a forum for such a challenge. He would have to exhaust his state law remedies and, if not successful, he could pursue 28 U.S.C. § 2254 relief.

served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

January 9, 2011.